# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

GENERAL LAND OFFICE OF THE STATE
OF TEXAS,
     *Plaintiff,*

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, THE HONORABLE DEB
HAALAND in her official capacity as
Secretary of the Interior, UNITED STATES
FISH AND WILDLIFE SERVICE, MARTHA
WILLIAMS in her official capacity as Acting
Director of the United States Fish and Wildlife
Service, and AMY LUEDERS in her official
capacity as Southwest Regional Director of the
United States Fish and Wildlife Service,
     *Defendants.*

Case No. 6:22-CV-00044

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

THEODORE HADZI-ANTICH
ROBERT HENNEKE
CONNOR MIGHELL (*Application for
Admission Pending*)
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

*Attorneys for Plaintiff*

## I.     INTRODUCTION

1.     The defendants named above (collectively, the "Federal Defendants" or the "Service") have disobeyed the vacatur and remand orders of the Fifth Circuit and this court by continuing to violate the Endangered Species Act (the "ESA") and its implementing regulations. Once again, the Federal Defendants have used an impermissibly stringent standard to deny the 90-day Petition to remove the Golden-Cheeked Warbler (the "Warbler") from the ESA list of endangered species.  Accordingly, Plaintiff General Land Office of the State of Texas ('TXGLO") files this Complaint seeking declaratory judgment and injunctive relief.

## II.     PARTIES

2.     Plaintiff TXGLO is the oldest state agency in Texas and, among other things, is charged with maximizing revenues from Texas public lands dedicated to the Permanent School Fund.  TXGLO derives those revenues by selling public school lands and leasing their mineral rights, which flow to the Permanent School Fund under the Texas Constitution.  *See* Tex. Const. Art. VII § 5(g).  TXGLO also owns and maintains state veterans' homes that provide care and dignity for veterans, their spouses, and Gold Star parents, as well as state veterans' cemeteries to honor those who have served.  TXGLO owns or maintains public school lands which contain Warbler habitat.  The federal government undermines TXGLO's ability to maximize revenues by imposing restrictions due to Warbler population or habitat on TXGLO property, lowering the property's market value and subjecting TXGLO to onerous, costly, and time-consuming ESA review.  Delisting the Warbler will therefore provide immediate relief for TXGLO.

3.     Defendant United States Department of the Interior ("Interior") is a department-level agency of the United States.  Congress has charged Interior with administering the ESA for terrestrial species.

4.      Defendant United States Fish and Wildlife Service (the "FWS" or the "Service") is a bureau of Interior.  The FWS has responsibility for the day-to-day administration of the ESA, including listing and delisting terrestrial species and designating their critical habitat.

5.      Defendant Deb Haaland is the Secretary of the Interior.  She oversees Interior's administration of the ESA.

6.      Defendant Martha Williams is the Acting Director of the FWS.  She oversees the Service's administration of the ESA.

7.      Defendant Amy Lueders is the Southwest Regional Director of the FWS.  She oversees the Service's administration of the ESA in a region that includes the State of Texas.

### III.      JURISDICTION AND VENUE

8.      Plaintiff brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1540(g)(1)(A).

9.      This court has subject matter jurisdiction pursuant to 5 U.S.C. §§ 701-706 (APA); 28 U.S.C. § 2201 (Declaratory Judgment Act); and 16 U.S.C. §§ 1540(g)(1)(A) and (C) and (g)(2)(A) and (B) (ESA citizen suit provisions).

10.      Pursuant to the citizen suit provisions of ESA, Plaintiff sent a 60-day notice of intent ("NOI") to sue the Federal Defendants over their respective failures to comply with the ESA and the orders of the Fifth Circuit and this Court.  The NOI was sent to the Federal Defendants on October 11, 2021, and was received by the last of them on October 12, 2021.  A copy of the NOI is included in Exhibit A.  A copy of the receipts showing delivery of the NOI is included in Exhibit B.  Accordingly, Plaintiff has complied with the 60-day notice requirements of the ESA.

11.     The relief requested is authorized by 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), 5 U.S.C. §§ 701-706 (APA), and 16 U.S.C. § 1540(g) (ESA citizen suit provision).

12.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States," and 16 U.S.C. § 1533(b)(3)(C)(ii) (authorizing judicial review of negative 90-day findings made under the ESA).

13.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, or the plaintiff resides in this district.  In addition, venue is appropriate under 16 U.S.C. § 1540(g)(3)(A) because the violation occurred in this district. Venue is appropriate also under 5 U.S.C. § 703.

14.     An actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

15.     The federal Government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702 and 16 U.S.C. § 1540.

16.     Plaintiff TXGLO has exhausted all administrative remedies, the Federal Defendants' action is final and ripe for review, and Plaintiff has standing because it is injured in fact because of the Federal Defendants' denial of the 90-day Petition, which continues the burdens of the ESA on Plaintiff's properties located in Texas, and this court has the power to redress that injury by vacating the denial of the 90-day Petition and providing the requested declaratory and injunctive relief.

## IV.    LEGAL BACKGROUND

### A.    Endangered Species Act and Implementing Regulations

17.    Congress passed the ESA to protect species vulnerable to extinction and conserve the ecosystems upon which endangered and threatened species depend. *See* 16 U.S.C. § 1531(b). Before a species receives full protection under the ESA, it must be listed as "threatened" or "endangered." A "threatened" species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20). An "endangered" species is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). The government determines whether to list a species based on certain factors using the "best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A).

18.    Under regulations in effect on the date the 90-day Petition was filed by the Plaintiff, a species was to be listed if it was endangered or threatened based on any one or a combination of these factors:

   a.    The present or threatened destruction, modification, or curtailment of its habitat or range;

   b.    Overutilization for commercial, recreational, scientific, or educational purposes;

   c.    Disease or predation;

   d.    The inadequacy of existing regulatory mechanisms; or

   e.    Other natural or manmade factors affecting its continuing existence. 50 C.F.R. § 424.11(c)(1)–(5) (2014).

19.     Once a species is listed as "threatened" or "endangered," the ESA protects it by making it unlawful for any person to "take" such species.  16 U.S.C. § 1538(a)(1)(B).  To "take" means to "harass, harm, hunt, pursue, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).

20.     Federal agencies must consult with the Secretary of the Interior if they believe their projects on any property may affect endangered or threatened species.  Every five years the Secretary of the Interior must review each listed species to determine whether a change in the species' listing status is warranted.  16 U.S.C. § 1533(c)(2)(A).  This includes a determination as to whether a species should be delisted or changed in status from endangered to threatened, or *vice versa*.  16 U.S.C. § 1533(c)(2)(B).  Under rules in effect as of the time relevant to this complaint, species may be delisted if, after review of the species, the best scientific and commercial data substantiates that the species is neither threatened nor endangered due to extinction, recovery, or the original scientific or commercial data used at the time the species was classified (or the interpretation of such data) were in error.  50 C.F.R. § 424.11(d)(3) (2014); *see General Land Office of Tex. v. United States* DOI, 947 F. 3d 309, 320-21 (Fifth Cir. 2020) (holding that the Service must apply the regulations in effect at the time the 90-day Petition was filed with the agency); *see also* 81 Fed. Reg. 7414, *et seq.* (February 11, 2016) (amending 50 CFR Part 424, effective as of March 14, 2016).  For the convenience of the Court, the codification of the applicable regulations in effect as of the date on which the 90-day Petition was filed is included as Exhibit C of this complaint.

21.     The factors considered for delisting are the same as those considered when listing a species.  *Id*.

22.     The government has a duty to specify critical habitat for any threatened or endangered species "to the maximum extent prudent and determinable."   16 U.S.C. § 1533(a)(3)(A)(i).  Critical habitat means "the specific areas within the geographical area occupied by the species . . . on which are found those physical or biological features essential to the conservation of the species and which may require special management considerations or protection," as well as specific areas outside an endangered species' range "upon a determination by the Secretary [of Commerce] that such areas are essential for the conservation of the species." 16 U.S.C. § 1532(5)(A)–(B) (cleaned up).

23.     An interested person may petition the federal government to add a species to or remove a species from the endangered or threatened species lists (a "90-day petition").  *See* 16 U.S § 1533(b)(3)(A).  Within 90 days after receiving such a petition, "the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  *Id*.  When doing so, the Secretary must consider any information within the petition or attached to it that comports with certain regulatory requirements in effect at the time a 90-day Petition is filed.  *See* 50 C.F.R. § 424.11(b) – (f) (2014).  If the Secretary finds the petitioned action may be warranted, the Secretary must review the species' endangered or threatened status.  *Id*.  Any negative finding on a petition is subject to judicial review.  16 U.S.C. § 1533(b)(3)(C)(ii).

24.     The ESA citizen suit provision permits any person to sue on his own behalf under several circumstances, including filing a suit "against the Secretary where there is alleged failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary."  16 U.S.C. § 1540(g)(1)(C).  This provision negates the "zone of interests" test for prudential standing.  *See Bennett v. Spear*, 520 U.S. 154, 164 (1997).  The Secretary has

no discretion to ignore or otherwise refuse to comply with federal court orders issued in connection

with a 90-day petition filed pursuant to 16 U.S.C. § 1533(b)(3)(A).

**B.**     **Administrative Procedure Act and Implementing Regulations**

25.     The Administrative Procedure Act ("APA") provides a right to judicial review for

any "person suffering legal wrong because of agency action."  5 U.S.C. § 702.  The reviewing

court must "hold unlawful and set aside agency action" that it finds "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law; contrary to constitutional right, power,

privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right; [or] without observance of procedure required by law . . . ."  5 U.S.C. § 706(2)(A)–

(D) (cleaned up).

## V.     FACTUAL ALLEGATIONS

### The Golden-Cheeked Warbler: A Texas-Nesting Species

26.     The Warbler is an insectivorous migratory songbird that breeds in the mixed Ashe

juniper and deciduous woodlands of Central Texas.

27.     The Warbler arrives in Texas from late February through April, migrating afterward

through Central America in July and August.

28.     The Warbler is the only bird species that nests entirely in the state of Texas.

### The Federal Government Lists The Warbler As Endangered

29.     The Warbler was first mentioned by the United States Fish and Wildlife Service in

a Notice of Review published on December 30, 1982, as a species under consideration for addition

to the List of Endangered and Threatened Wildlife.  47 Fed. Reg. 251, 58459.  At that time, the

Warbler was categorized as a species for which the Service had information indicating that a

proposal to list the species was "possibly appropriate, but for which substantial data are not

currently available to biologically support a proposed rule.  Further biological research and field study will usually be necessary to ascertain the status of the taxa in this category, and it is likely that some of the taxa will not warrant listing." *Id*. at 58454.  The Warbler remained in that category for both the September 18, 1985 Review of Vertebrate Wildlife [50 Fed. Reg. 37958] and the January 6, 1989, Animal Notice of Review [54 Fed. Reg. 554].

30.    On February 2, 1990, a petition was filed seeking an emergency listing for the Warbler, allegedly because the normal listing procedure could be "inadequate to protect the bird and its habitat from imminent destruction from clearing and development."  55 Fed. Reg. 18846, 18847.

31.    The Service emergency-listed the Warbler on May 4, 1990, finding that "ongoing and imminent habitat destruction" warranted the action.  *Id*. at 18844.

32.    The Service indicated in this ruling that Central Texas contained some of the best Warbler habitat, and that increased development in the region placed this habitat under threat.  *Id*.

33.    The Service published a Final Rule listing the species on December 27, 1990.  55 Fed. Reg. 53153.

34.    The Final Rule estimated there to be approximately 15,000 - 17,000 Warblers and between 79,400 - 263,750 acres of available suitable habitat.  *Id*. at 53154.

35.    In the Final Rule, the Service stated that the Warbler should be listed based on:

    a.    the present or threatened destruction of Warbler habitat;

    b.    the possibility of nest predation by Central Texas species;

    c.    the lack of regulatory protection for Warbler habitat; and

    d.    the lack of reproduction of deciduous trees in Warbler habitat.

*Id*. at 53157–59.

**The 90-day Delisting Petition**

36.     On June 29, 2015, Texans for Positive Economic Policy, Susan Combs, the Texas Public Policy Foundation, and the Reason Foundation ("Petitioners") submitted a petition to remove the Warbler from the endangered species list (the "90-day Petition" or the "Petition").  The Petition is attached to this complaint as Exhibit D.

37.     Among other things the Petition provided the following information to support its contention that delisting the Warbler may be warranted:

       a.      Warbler habitat is far larger than was known at the time the Warbler was listed, *see* Exhibit D at 13, 18;

       b.      the Warbler population is about 19 times greater than was believed when the Warbler was listed, *see id*. at 19;

       c.      habitat fragmentation and urbanization are not a threat to the Warbler due to the size and scope of its habitat and population, *see id.* at 28; and

       d.      many existing conservation plans and mechanisms exist for the Warbler such that the probability of its extinction over the next 100 years is low, *see id*. at 20, 23–25.

38.     The Petition stated that application of the best available scientific and commercial information indicates that, because the Warbler does not meet the ESA's statutory factors for listing, it is "ineligible for continued listing as an endangered species."  *Id*. at 14.

**The First 90-Day Finding**

39.     On June 3, 2016, the Service made a negative 90-day finding denying the Petition (the "First 90-day Finding"), claiming that there continues to be "ongoing, widespread destruction of [Warbler] habitat" and that the Warbler is still in danger of extinction.  81 Fed. Reg. 35698,

35700 (June 3, 2016).  For the convenience of the Court, the Service's 2016 petition review form setting forth the details of the First 90-day Finding is attached as Exhibit E.

40.     While acknowledging that new data published since the Warbler's listing indicate growth in the Warbler's population and the existence of more habitat, the Service claimed this data represented "estimates rather than indicators of positive trends" and therefore, according to the Service, do not imply recovery of the species.  81 Fed Reg. at 35700.  Although the Service noted that a study published after the Service received the 90-day Petition supported the contention that the exact Warbler population was uncertain, the Service falsely faulted the Petition for failing to address habitat fragmentation, disease and predation.  *Id.*

41.     The Service ignored or discounted without adequate explanation the Petition's data showing (a) remarkable increases in Warbler population and habitat and (b) substantial evidence that neither disease nor predation significantly threaten the Warbler. Instead the Service, stated that the Petition provided no "new information" indicating the Warbler should be removed from the endangered species list or that the original listing was in error.  *Id*. at 35700.

### The Original Lawsuit

42.     Plaintiff TXGLO filed suit in the Western District of Texas against the Service and other defendants on June 5, 2017, challenging the First 90-day Finding as in violation of the ESA and its implementing regulations and arbitrary and capricious.  The district court upheld the First 90-day Finding.  *See Gen. Land Office of Tex. v. U.S. Fish and Wildlife Serv.*, 2019 WL 1010688 (W.D. Tex. Feb. 6, 2019).  For the convenience of this Court, the 2019 district court order is set forth as Exhibit F.

43.     TXGLO appealed, and the Fifth Circuit reversed the district court's ruling, holding that the First 90-day Finding violated the ESA and was arbitrary and capricious.  *See Gen. Land Office of Tex. v. United States Dept. of the Interior*, 947 F.3d 309, 320–21 (5th Cir. 2020).

44.     Among other things, the Fifth Circuit ruled that the Service applied an inappropriately stringent standard of review by impermissibly requiring the Petition to present "new" information the Service had not considered in its five-year review.  *Id*. at 321.

45.     The Fifth Circuit held that applicable regulations in effect at the time of the filing of the Petition required only that a petition present "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted."  *Id*. at 320–21.

46.     The Fifth Circuit went on to hold that, in denying the 90-day Petition, "[t]he Service *recited* [the correct] standard, but a careful examination of its analysis shows that the Service *applied* an inappropriately heightened one."  *Id.* at 321 (emphasis in the original).

47.     The Fifth Circuit held that the Service's denial of the 90-day Petition violated the ESA and was arbitrary and capricious because it applied an inappropriately stringent standard that was not authorized by the ESA or the then-applicable regulations. *Id.*

48.     Accordingly, the Fifth Circuit vacated the First 90-day Finding and remanded to the Service for reconsideration of the Petition, ordering the Service to use the correct legal standard, as specified by the Court. *Id.*

49.     On January 26, 2021, the district court awarded Plaintiff TXGLO attorney fees and issued its final judgment closing the case.  *See Gen. Land Office of Tex. v. United States Dept. of the Interior*, Case No. 1:17-CV-00538-LY, Doc. No. 96.  For the convenience of this Court, the final judgment of the district court is attached to this complaint as Exhibit G.

**The Service Defies The Fifth Circuit's Order In Its Second 90-day Finding**

50.     On July 27, 2021, the Service published a new 90-day finding on the Petition ("the Second 90-Day Finding").  Once again, the Service found that the 90-day Petition did not present

11

substantial scientific or commercial data indicating that delisting the Warbler may be warranted. 86 Fed. Reg. 40186.

51.     The Service provided its reasoning for the Second 90-day Finding in a new petition review form dated July 7, 2021.  For the convenience of this Court, the 2021 petition review form of the Second 90-day Finding is attached to the complaint as Exhibit H.

52.     In the Second 90-day Finding, the Service disobeyed the Fifth Circuit's order and once again applied an impermissibly heightened standard of review to the Petition.  As in the First 90-day Finding, in the Second 90-day Finding the Service recited the correct standard, but then applied an incorrect standard by stating that the Petition "does not report any *new* data or study results . . . but summarizes readily available information about the [Warbler] and its habitat."  *See* Exhibit H at Factor A(1)(a) (unpaginated) (emphasis added).  Thus, the Service again impermissibly required Petitioners to present *new* information the Service had not previously considered.  This is precisely the standard that the Fifth Circuit told the Service not to apply when analyzing the 90-day Petition.  *See Gen. Land Office*, 947 F.3d at 321 ("[T]he Service required the delisting petition to contain information the Service had not considered in its five-year review . . . The Service thus based its decision to deny the delisting petition on an incorrect legal standard.").

53.     In addition, as shown throughout the Second 90-day Finding's petition review form set forth in Exhibit H, the Service ignored or misconstrued substantial scientific information presented in the Petition.  It did so despite the Service's usual practice of "accept[ing] the petitioner's sources and characterizations of the information unless we [the Service] have specific information to the contrary."  *Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 176 n.4 (D.D.C. Sept. 7, 2006).

54.     The Service also failed to consider whether the original habitat and population data for the Warbler were in error—a fundamental question the 90-Day Petition posed—and instead choose to ignore this question in an oversight that defies reason.  *See* Exhibit D at 13, 14; *see also* 50 C.F.R. § 424.11(d)(3) (2014).

55.     The Service required the Petition to present conclusive evidence that the Warbler has recovered, again applying an incorrect standard of review that led to the vacatur and remand of the First 90-day Finding.  Specifically, the Service's petition review form states that the Petition only provides "new estimates rather than indicators of positive trends in [Warbler] habitat and population size, and thus do not imply recovery."  Exhibit H at Factor A(1)(a) (unpaginated) This Court recently held such an approach unlawful, stating that "[t]he Service violated its regulations when it required . . . *conclusive* evidence [of] population trends . . . and the Service committed a clear error in judgment and acted arbitrarily, capriciously, and not in accordance with the law when it called for more evidence than the law requires."  *Am. Stewards of Liberty v. U.S. Dep't of the Interior*, 370 F. Supp. 3d 711, 725 (W.D. Tex. 2019) (*emphasis added*).  As in *American Stewards*, here the Service again applied a higher standard of review than the law permits.

56.     The Service acknowledged in its review form that the habitat range and population of the Warbler were both larger than what had been known when the Warbler was listed.  *See* Exhibit H, at Petition Finding ("We acknowledge that the known potential range is more extensive than when the [Warbler] was originally listed in 1990.") (unpaginated).  Bewilderingly, however, the Service ignored or discounted this information without adequate explanation. So again, in violation of the specific instructions of the Fifth Circuit, the Service denied the fact that the best scientific data shows the Warbler *may* be a candidate for delisting.

57.     The Warbler's population numbers in the hundreds of thousands, and the Warbler has millions of acres of available habitat.  The Petition made this clear.  The Petition also showed that, based on the best scientific data, neither habitat fragmentation nor disease or predation provide a threat to the Warbler.  *See* Exhibit D at, *e.g.,* 17, 22, 25, 27, 28.  The Service turned a blind eye to this information and instead falsely claimed the Petition did not address habitat fragmentation, disease, or predation of the Warbler.

58.     The Service also failed to account for Dr. James Mueller's presentation to the Texas Chapter of the Wildlife Society on February 25, 2021 entitled *Where and by How Much do Golden-Cheeked Warbler Models Differ?*  This presentation described Mueller's study using presence-absence surveys to conclude there were between 220,000 and 276,000 singing male Warblers throughout the Warbler breeding range and that the species did not appear to be imminently threatened with extinction.  While this study has not been published yet, the information referenced would have been in the Service's files when they issued the Second 90-day Finding.

59.     Finally, the Service required proof of Warbler recovery as a condition precedent for a positive 90-day finding.  But success at the 90-day finding stage only requires a petition to present substantial information that delisting *may be* warranted and not that delisting is warranted.

### The Current Lawsuit

60.     On October 11, 2021, pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2), Plaintiff TXGLO provided a 60-day notice of intent to file suit against the Service to the Federal Defendants.  As indicated above, the 60-day notice letter is attached as Exhibit A and is hereby incorporated by reference in its entirety in this Complaint.

## VI.   PLAINTIFF'S CLAIMS FOR RELIEF

**First Claim For Relief**

**IN DIRECT VIOLATION OF THE FIFTH CIRCUIT'S REMAND ORDER, THE SERVICE IMPERMISSIBLY REQUIRED THE 90-DAY PETITION TO CONTAIN NEW INFORMATION THAT THE SERVICE HAD NOT CONSIDERED DURING IT'S PREVIOUS FIVE YEAR REVIEW**

**(Violation of 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1) (2014); 50 C.F. R. § 424.11(c)-(d) (2014); 5 U.S.C. § 706(2))**

61.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

62.     Upon receipt of a delisting petition, federal law requires the Service, acting under delegation from the Secretary of the Interior, to "make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action *may* be warranted."  16 U.S.C. § 1533(b)(3)(A) (emphasis added).

63.     According to the ESA's implementing regulations in effect at the time the Petition was submitted, "substantial information" means "that amount of information that would lead a reasonable person to believe that [delisting] *may be* warranted."  50 C.F.R. § 424.14(b)(1) (2014) (emphasis added). Nothing in those regulations required the 90-day Petition at issue here to contain new information not previously considered by the Service.

64.     After the 90-day Petition was submitted in 2015, the implementing regulations were revised in 2016, providing that where a prior species status review resulted in final agency action, a petitioned action "generally would not be considered to present substantial scientific and commercial information indicating the petitioned action may be warranted unless the petition provides *new information* not previously considered."  50 C.F.R. 424.14(h)(iii) (2016) (emphasis added).

65.     In its First 90-day Finding, the Service impermissibly applied the 2016 revision of the ESA's implementing regulations to the 90-day Petition.

66.     The Fifth Circuit found in the Original Lawsuit that "[t]he Service *recited* [the correct] standard, but a careful review of its analysis shows that the Service *applied* an inappropriately heightened one." *See Gen. Land Office*, 947 F.3d at 321.  Among other things, the Court found that "the Service required the [Petition] to contain information the Service had not considered in its five-year review," which was "an incorrect legal standard." *Id*.  Accordingly, the Fifth Circuit found the Service's First 90-day Finding unlawful, arbitrary and capricious, vacated the 90-day Finding, and remanded to the Service, requiring it to apply the correct standard of review. *Id.*

67.     The Service defied the Fifth Circuit's explicit instructions and impermissibly applied in its Second 90-day Finding the same incorrect standard it had applied in the vacated and remanded First 90-day Finding, requiring the Petitioners to offer "new data or study results," while improperly criticizing the 90-day Petition because it "summarizes readily available information about the warbler and its habitat."  Exhibit H at Factor A(1)(a).

68.     The Service's inexplicable and willful refusal to apply the correct standard of review at the 90-day stage notwithstanding the order of the Fifth Circuit violated the ESA and its implementing regulations applicable at the time the 90-day Petition was filed and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ."  5 U.S.C. § 706(2)(A)–(D) (cleaned up).

**Second Claim For Relief**

**THE SERVICE IMPERMISSIBLY REQUIRED PETITIONERS TO SHOW PROOF OF RECOVERY AT THE 90-DAY STAGE**

**(Violation of 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1) (2014); 5 U.S.C. § 706(2))**

69.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 68 as though fully set forth herein.

70.     The Service stated in its Second 90-day Finding that the Petition's information presented in favor of delisting constituted "estimates rather than indicators of positive trends in warbler habitat and population size, and thus *do not imply recovery*." Exhibit H at Factor A(1)(a). (emphasis added) (unpaginated).  Moreover, the Service stated that "recovery criteria have not been *accomplished*." *Id.* (emphasis added).

71.     The Service's requirement that the Petitioners provide conclusive evidence at the 90-day stage that the Warbler had recovered goes well beyond the requirements of the ESA and its then-applicable regulations, which simply require substantial evidence that delisting *may* be warranted under a reasonable person standard. Accordingly, the Service's insistence on conclusive proof of recovery at the 90-day stage violates the ESA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(A) - (D).

**Third Claim For Relief**

**THE SERVICE IMPERMISSIBLY USED ITS SPECIES RECOVERY PLAN AS THE DETERMINATIVE FACTOR IN DENYING THE 90-DAY PETITION**

**(Violation of 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. 424(b)(1) (2014); 5 U.S.C. § 706(2))**

72.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 71 as though fully set forth herein.

73.     At the 90-day stage, when determining whether a petition presents substantial information that may lead to delisting, the Service is bound by the ESA's explicit criteria supplemented by the criteria in its applicable implementing regulations in effect at the time a 90-day petition is submitted. *See* 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b) (2014).

74.     Neither the ESA nor its applicable regulations authorized the Service to base its decision solely or substantially on its species recovery plans when evaluating a delisting petition at the 90-day stage. Courts have held that species recovery plans do not contain binding criteria and do not have the force of law. Rather, it is the ESA's statutory and regulatory criteria that bind the Service's decision-making at the 90-day stage and not the species recovery plan. *See, e.g., Friends of Blackwater v. Salazar*, 691 F.3d 428, 434 (D.C. Cir. 2012); *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 547 (11th Cir. 1996); *Conservation Cong. v. Finley*, 774 F.3d 611, 614 (9th Cir. 2014) (citing *Friends of Blackwater*).

75.     The Service impermissibly used its species recovery plan as the determinative factor in issuing its negative 90-day Finding on the Warbler, going beyond the standard permitted by law. *See* Exhibit H at Factor A.1.a (unpaginated) ("[R]ecovery criteria have not been accomplished") (citing the Service's species recovery plan). In doing so, the Service ignored or impermissibly discounted substantial scientific and commercial information in the Petition indicating the Warbler had met or exceeded the legal standard under the ESA's then-applicable implementing regulations to support a finding that delisting may be warranted. *See* Exhibit D at 12-29.

76.     The Service's *ultra vires* use of the species recovery plan as the determinative factor in denying the 90-day Petition, while disregarding or impermissibly discounting the Petition's substantial evidence that delisting of the Warbler may be warranted, was a violation of the ESA and its then-applicable implementing regulations and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(A), (D).

**Fourth Claim For Relief**

**THE SERVICE IMPERMISSIBLY FAILED TO PROPERLY CONSIDER INFORMATION IN THE 90-DAY PETITION REGARDING HABITAT FRAGMENTATION, URBANIZATION, DISEASE AND PREDATION**

**(Violation of 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. 424.14(b)(1) (2014); 5 U.S.C. § 706(2))**

77.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 76 as though fully set forth herein.

78.     When determining whether a 90-day Petition presents substantial information that may lead to delisting, the Service considers the factors listed in the ESA and its implementing regulations. *See* 16 U.S.C. § 1533(b)(3)(A), 50 C.F.R. § 424.14(b) (2014), 50 C.F.R. § 424.11(c)-(f) (2014).

79.     The Service falsely states in its Second 90-day Finding that the Petition failed to adequately address various threats to the Warbler, including those caused by habitat fragmentation, urbanization, disease, and predation. *See* Exhibit H at Factors A(1)(a) and C (unpaginated).

80.     In fact, the Petition includes substantial scientific and commercial information showing that habitat fragmentation, urbanization, disease, and predation may not pose substantial threats to the Warbler. *See* Exhibit D at 17, 22, 25, 27–28. The Service failed to properly consider

such information when making the Second 90-day Finding, which requires only substantial evidence that delisting *may* be warranted under a reasonable person standard. The Service's failure to apply the correct standard when reviewing the evidence set forth in the 90-day Petition regarding fragmentation, urbanization, disease, and predation violated the ESA and its then-applicable implementing regulations and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(A) - (D).

### Fifth Claim For Relief

### THE SERVICE IMPERMISSIBLY FAILED TO PROPERLY CONSIDER SUBSTANTIAL INFORMATION SET FORTH IN THE 90-DAY PETITION DEMONSTRATING INCREASES IN THE WARBLER'S POPULATION AND HABITAT

### (Violation of 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(2) (2014); 50 C.F.R. § 424.11(c)-(d); 5 U.S.C. § 706

81.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 80 as though fully set forth herein.

82.    When making a finding on a delisting petition under 16 U.S.C. § 1533(b)(3)(A), the Service "shall consider" the criteria referenced in 50 C.F.R. § 424.14(b)(2) (2014) and 50 C.F.R. § 424.11(c)-(d) (2014), which include population and habitat considerations.

83.    The 90-day Petition presented substantial scientific and commercial information demonstrating remarkable increases in Warbler population and habitat since the initial listing, thereby meeting the applicable statutory and regulatory requirements that delisting *may* be warranted under a reasonable person standard. *See* Exhibit D at 18-29. In reviewing the 90-day Petition, the Federal Defendants impermissibly rebuffed and downplayed such information by

failing to give appropriate credence to a wealth of peer-reviewed studies supporting a finding that delisting may be warranted based upon increases in Warbler population and habitat. *See* Exhibit H at Factor A(1)(a) (unpaginated).

84.     The Federal Defendants' failures to follow their statutory and regulatory duties under the ESA to properly consider relevant information presented in the 90-day Petition regarding Warbler population and habitat violate the ESA and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706(2)(A) - (D).

### Sixth Claim for Relief

**THE SERVICE IMPERMISSIBLY IGNORED SUBSTANTIAL INFORMATION SET FORTH IN THE 90-DAY PETITION SHOWING THAT THE ORIGINAL SCIENTIFIC OR COMMERCIAL DATA USED AT THE TIME THE WARBLER WAS LISTED WERE IN ERROR**

**(Violation of 50 C.F. R. § 424.1(d)(3) (2014); 5 U.S.C. § 706)**

85.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 84 as though fully set forth herein.

86.     Under rules in effect as of the time relevant to this complaint, it is appropriate for the Service to make a positive 90-day finding where a delisting petition shows that the best scientific or commercial data available when the species was *originally* listed (or the interpretation of such data) were in error. *See* 50 C.F.R. § 424.11(d)(3) (2014); *see also* 81 Fed. Reg. 35698, 35700 (June 3, 2016); 81 Fed. Reg. 7414 (Feb, 11, 2016).

87.     Here, the 90-day Petition provided substantial scientific or commercial data showing that the best scientific or commercial data available when the species was originally listed (or the interpretation of such data) were in error. *See* Exhibit D at 14-20.

88.     The Federal Defendants inexplicably ignored the substantial scientific and commercial information in the 90-day Petition showing that the best scientific or commercial data available when the species was originally listed (or the interpretation of such data) were in error. *See* Exhibit H at Factors A, C, and D (unpaginated).  This failure to properly consider such information set forth in the 90-day Petition was in violation of the ESA and its applicable regulations and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ."  5 U.S.C. § 706(2)(A), (D).

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully seeks an Order of this Court:

A.     Declaring that Federal Defendants did not follow the proper evidentiary standard in the Second 90-Day Finding, thereby rendering the Second 90-Day Finding *ultra vires*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law.

B.     Declaring the proper evidentiary standard for the Second 90-Day Finding, as set forth in the Fifth Circuit's Order and as reflected in the regulations in effect at the time the 90-day Petition was filed;

C.     Holding unlawful, setting aside, and vacating the Second 90-Day Finding;

D.     Ordering the Federal Defendants to make a positive 90-day finding within 90 days of this Court's final judgment in this case and to proceed to the 12-month review, or alternatively, ordering the Federal Defendants to issue a 90-Day finding on the Petition applying the proper

evidentiary standard declared by the Fifth Circuit in the Original Lawsuit within 90 days of this

Court's final judgment in this case;

      E.      Retaining continuing jurisdiction of this matter until the Federal Defendants fully

remedy the violations of law complained of herein;

      F.      Awarding Plaintiff its costs and attorneys' fees as appropriate; and

      G.      Providing such other relief as is just and proper.

DATED:      January 12, 2022            Respectfully submitted,

                                            */s/Theodore Hadzi-Antich*
                                          THEODORE HADZI-ANTICH
                                          CA Bar No. 263664
                                          tha@texaspolicy.com
                                          ROBERT HENNEKE
                                          TX Bar No. 24046058
                                          rhenneke@texaspolicy.com
                                          CONNOR MIGHELL *(Application for Admission Pending)*
                                          TX Bar No. 24110107
                                          cmighell@texaspolicy.com
                                          TEXAS PUBLIC POLICY FOUNDATION
                                          901 Congress Avenue
                                          Austin, Texas 78701
                                          Telephone:    (512) 472-2700
                                          Facsimile:    (512) 472-2728

                                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2022, I electronically filed the foregoing Complaint for Declaratory and Injunctive Relief, Exhibits A-H, and this Certificate of Service with the Clerk of the Court for the United States District Court for the Western District of Texas by using the CM/ECF system. In accordance with Fed. R. Civ. Proc. 4, I am causing to be served one true and correct copy of the filed documents via certified mail, along with a summons, on each of the following persons:

The United States Department of the Interior
1849 C Street, NW, MS 5311
Washington, DC 20240

The Honorable Deb Haaland
In her Official Capacity as Secretary of the Interior
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

The United States Fish and Wildlife Service
1849 C Street, NW
Washington, DC 20240

Martha Williams
In her Official Capacity as Acting Director and Principal Deputy Director
U.S. Fish and Wildlife Service
1849 C Street, NW
Washington, DC 20240

Amy Lueders
In her Official Capacity as Southwest Regional Director
U.S. Fish and Wildlife Service
500 Gold Avenue SW
Albuquerque, NM 87102-3118

Ashley Chapman Hoff
U.S. Attorney for the Western District of Texas
800 Franklin Avenue, Suite 280
Waco, TX 76701

*/s/Theodore Hadzi-Antich*
THEODORE HADZI-ANTICH